# Supreme Court of Florida

————————

No. SC2022-1042

————————

**KEVIN VERICKER,**
Petitioner,

vs.

**NORMAN CHRISTOPHER POWELL,**
Respondent.

March 27, 2025

GROSSHANS, J.

By statute, Florida prohibits "Strategic Lawsuits Against Public Participation." § 768.295, Fla. Stat. (2024). Recognizing the harms caused by these lawsuits, the Legislature created a framework for the expeditious resolution of claims brought in violation of the Anti-SLAPP statute. Litigants invoke this statute when attempting to dispose of a prohibited lawsuit prior to trial.

The certified conflict issue we address is whether a district court of appeal has certiorari jurisdiction to immediately review the

denial of a motion brought under the Anti-SLAPP statute.[1]  Like the district court below, *see Vericker v. Powell*, 343 So. 3d 1278 (Fla. 3d DCA 2022), we conclude that certiorari is not a proper basis for reviewing such orders.

Nevertheless, we acknowledge the Legislature's stated purpose in crafting the statute—to safeguard the exercise of constitutionally protected free-speech rights by prohibiting lawsuits targeted at suppressing them.  § 768.295(1).  The Legislature further expressed its intent that "such lawsuits be expeditiously disposed of by the courts."  *Id.*  To give procedural effect to these statements, as well as the statute's substantive provisions, we amend (through separate opinion) Florida Rule of Appellate Procedure 9.130(a)(3).  That amendment will provide for interlocutory review of nonfinal orders that deny qualifying motions filed pursuant to sections 718.1224(5), 720.304(4)(c), or 768.295(4), Florida Statutes (2024).  *See In re Amends. to Fla. Rule of App. Proc. 9.130*, No. SC2024-1798 (Fla. Mar. 27, 2025).

---

1.  We have jurisdiction.  *See* art. V, § 3(b)(4), Fla. Const.

## I

Petitioner, Kevin Vericker, published an internet blog entitled "North Bay Village Reality Based Community." After North Bay Village appointed Respondent, Norman Christopher Powell, as its attorney, Vericker published several posts on his blog that questioned Powell's credentials, character, and competency. Ultimately, Powell filed a single-count lawsuit against Vericker, alleging that statements in the blog posts constituted defamation. Indeed, according to Powell, the blog statements were defamatory per se.

After discovery, Vericker filed a motion labeled as a "motion for summary judgment" and "anti-SLAPP motion." Among other things, Vericker contended that Powell was a public-official plaintiff and, thus, was required to prove actual malice. The record, Vericker claimed, established that Powell could not meet that standard. On this basis, Vericker asserted that Powell's defamation suit was "without merit" and retaliatory in nature, thereby violating the Anti-SLAPP statute. Following a hearing, the trial court denied Vericker's motion in its entirety.

Vericker then petitioned for a writ of certiorari in the Third District Court of Appeal, asking that court to review the nonfinal order denying his Anti-SLAPP motion. Not bound by controlling precedent in this context, the Third District considered whether certiorari provided a proper basis for reviewing the denial of Anti-SLAPP motions. *Vericker*, 343 So. 3d at 1279-81. As part of its analysis, the Third District acknowledged the competing positions of the Second and Fourth District Courts of Appeal on this issue. *Id.* at 1280-81; *cf. Gundel v. AV Homes, Inc.*, 264 So. 3d 304 (Fla. 2d DCA 2019) (concluding that the Anti-SLAPP statute created a "substantive" right to be free from SLAPP suits and that the violation of this right was irreparable harm sufficient to support certiorari review); *WPB Residents for Integrity in Gov't, Inc. v. Materio*, 284 So. 3d 555 (Fla. 4th DCA 2019) (disagreeing with *Gundel* that a violation of the Anti-SLAPP statute results in irreparable harm but underscoring the purpose of the Anti-SLAPP statute as a reason for making denials of Anti-SLAPP claims a new category of appealable nonfinal orders under rule 9.130).

Ultimately adopting the Fourth District's position, the Third District held that "when public policy favors interlocutory review,

- 4 -

the proper course is for the [Florida Supreme Court] to amend the non-final appeal rule, not to expand certiorari jurisdiction." *Vericker*, 343 So. 3d at 1280 (quoting *Materio*, 284 So. 3d at 560). Notably, the Third District stressed that "having to defend against a lawsuit, even if meritless, does not constitute sufficient irreparable harm to invoke our certiorari jurisdiction." *Id.* at 1281 (citing *Rodriguez v. Miami-Dade Cnty.*, 117 So. 3d 400, 405 (Fla. 2013); *Sch. Bd. of Miami-Dade Cnty. v. C.A.F.*, 194 So. 3d 493, 497 (Fla. 3d DCA 2016)). In the end, the Third District certified conflict with *Gundel* and two cases[2] relying on *Gundel*'s reasoning. *Id.*

Based on the certified conflict, Vericker asked us to review the Third District's decision. We granted that request.

## II

It is well established that district courts of appeal generally lack authority to review nonfinal orders until after the trial court issues a final judgment. *See* art. V, § 4(b)(1); *Citizens Prop. Ins. Corp. v. San Perdido Ass'n, Inc.*, 104 So. 3d 344, 348 (Fla. 2012); *cf.*

---

2. *Baird v. Mason Classical Acad., Inc.*, 317 So. 3d 264 (Fla. 2d DCA 2021); *Davis v. Mishiyev*, 339 So. 3d 449 (Fla. 2d DCA 2022).

*Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 430 (1985) (discussing benefits of federal final-judgment rule). For the most part, the final-judgment rule prevents immediate review of orders denying case-dispositive pretrial motions. *See Tampa Port Auth. v. Henriquez*, 377 So. 3d 187, 190 n.2 (Fla. 2d DCA 2023) (denial of motion to dismiss designated as nonfinal order); *Forrey v. Marlin Constr. Grp., LLC*, 49 Fla. L. Weekly D1119 (Fla. 6th DCA May 24, 2024) (denial of motion for summary judgment labeled as nonfinal order).

However, such a ruling may be reviewed if authorized by rule 9.130, which lists specific nonfinal orders subject to appellate review in advance of a final judgment. *See* Fla. R. App. P. 9.130(a)(3). In addition, litigants may, when appropriate, invoke the original jurisdiction of an appellate court for issuance of writs, including writs of certiorari.

The writ of certiorari has historically been used in Florida to remedy rulings that depart from the essential requirements of law and which cannot otherwise be corrected on appeal from a final order. *Univ. of Fla. Bd. of Trs. v. Carmody*, 372 So. 3d 246, 254 (Fla. 2023) (only serious legal error remediable through certiorari);

*Kauffman v. King*, 89 So. 2d 24, 26 (Fla. 1956) (jurisdictional errors potentially remediable through certiorari). Although certiorari is a longstanding feature of our common law, *see Brooks v. Owens*, 97 So. 2d 693, 695 (Fla. 1957), the writ may be issued only in extraordinary circumstances and in the context of a review proceeding that is substantially more limited than an appeal, *Nader v. Fla. Dep't of Highway Safety and Motor Vehicles*, 87 So. 3d 712, 722 (Fla. 2012) (certiorari "is intended to be available only in very limited circumstances" outside the application of rule 9.130).

The narrow scope of certiorari is reflected in the burden that petitioners face when seeking relief. They must establish: (1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case (3) that cannot be corrected on postjudgment appeal. *Carmody*, 372 So. 3d at 252. We have referred to the "last two prongs together . . . 'as irreparable harm.'" *Id.* (quoting *Nader*, 87 So. 3d at 721). The irreparable-harm inquiry, we have said, presents a threshold jurisdictional issue to be decided before determining if a departure from the essential requirements of law has occurred. *See Rodriguez*, 117 So. 3d at 404.

# III

With these background principles in mind, we turn to the statute at issue here, which begins with a statement of legislative intent:

> It is the public policy of this state that a person or governmental entity not engage in SLAPP suits because such actions are inconsistent with the right of persons to exercise such constitutional rights of free speech in connection with public issues. . . . It is the intent of the Legislature that such lawsuits be expeditiously disposed of by the courts.

§ 768.295(1), Fla. Stat. (2017).

The statute goes on to say:

> (3) A person or governmental entity in this state may not file . . . any lawsuit . . . against another person or entity without merit and primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue . . . as protected by the First Amendment to the United States Constitution and s. 5, Art. I of the State Constitution.
>
> (4) A person or entity sued by a governmental entity or another person in violation of this section has a right to an expeditious resolution of a claim that the suit is in violation of this section. A person or entity may move the court for an order dismissing the action or granting final judgment in favor of that person or entity. The person or entity may file a motion for summary judgment, together with supplemental affidavits, seeking a determination that the claimant's or governmental entity's lawsuit has been brought in violation of this section. The claimant or governmental entity shall thereafter file a response and

any supplemental affidavits.  As soon as practicable, the court shall set a hearing on the motion, which shall be held at the earliest possible time after the filing of the claimant's or governmental entity's response.  The court may award, subject to the limitations in s. 768.28, the party sued by a governmental entity actual damages arising from a governmental entity's violation of this section.  The court shall award the prevailing party reasonable attorney fees and costs incurred in connection with a claim that an action was filed in violation of this section.

§ 768.295(3)-(4).

Emphasizing various features of this statute, Vericker asserts that the erroneous denial of an Anti-SLAPP claim should qualify as irreparable harm for purposes of certiorari review.  In his view, the Anti-SLAPP statute creates de facto immunity from speech-targeted lawsuits and that being subjected to that sort of lawsuit is an irreparable harm which cannot be remedied on appeal.  Thus, Vericker reasons, he is entitled to immediate review of the nonfinal order denying his Anti-SLAPP motion—relying on two nonbinding opinions from this Court.  *See San Perdido Ass'n, Inc.,* 104 So. 3d at 358 (Canady, J., dissenting) (concluding that statutory immunity from suit could support certiorari review); *Rodriguez,* 117 So. 3d at 410 (Canady, J., concurring in result only) ("[T]he erroneous continuation of legal proceedings against the immune governmental

entity constitutes irreparable harm because the full benefit of the legal immunity from suit cannot be restored on appeal.").

Powell, for his part, contends that the statute should be viewed merely as a fee-shifting statute rather than one creating any immunity from suit. *See Bongino v. Daily Beast Co., LLC.*, 477 F. Supp. 3d 1310, 1323 (S.D. Fla. 2020) ("Florida's statute is a garden variety fee shifting provision, which the Florida [L]egislature enacted to accomplish a 'fundamental state policy'—deterring SLAPP suits." (citing § 768.295(1))).

Though we do not share Powell's narrow view of the statute, we agree that the statute does not provide traditional immunity from suit. In coming to this conclusion, we focus on the statute's text, noting how it differs from immunity-granting statutes. *See Coates v. R.J. Reynolds Tobacco Co.*, 365 So. 3d 353, 354 (Fla. 2023) (expressing "paramount concern" for the text and surrounding context; comparing the statute's text with other related statutes); *Tsuji v. Fleet*, 366 So. 3d 1020, 1028-29 (Fla. 2023) (looking to how the Legislature used a key term in other statutes).

Florida's Anti-SLAPP statute does not use the word "immunity" or words with comparable meaning. *See* § 768.295. This stands in

- 10 -

contrast with statutes that expressly confer some form of immunity. *See, e.g.*, § 397.6775, Fla. Stat. (2024) (law enforcement immunity); § 560.116, Fla. Stat. (2024) (money services business immunity); § 631.918, Fla. Stat. (2024) (worker's compensation immunity); § 684.0045, Fla. Stat. (2024) (arbitrator immunity); § 765.109(1), Fla. Stat. (2024) (health care facility or provider immunity); § 768.095, Fla. Stat. (2024) (employer immunity for disclosing information to prospective employer); § 768.128(2), Fla. Stat. (2024) (immunity for those who treat or contain hazardous spills).

Nor does the statute contain structural or textual clues that might support an absolute right to be free from litigation. *E.g.*, § 768.28(9)(a), Fla. Stat. (2017) (precluding liability against individuals employed by state or counties absent proof of bad faith; prohibiting the naming of protected individuals as defendants); *cf. Rodriguez*, 117 So. 3d at 410 (Canady, J., concurring in result only) (discussing section 768.28(9)). The Anti-SLAPP statute, in fact, suggests that a successful Anti-SLAPP claimant will have to endure some level of litigation.

To prevail on an Anti-SLAPP claim, a defendant must show that the plaintiff's lawsuit is "without merit" and brought "primarily

because" the defendant exercised protected speech or conduct. A judicial determination that a speech-targeted lawsuit is "without merit" may not be possible at the outset of a case and may require the development of a factual record. The Anti-SLAPP statute also specifically notes that aggrieved parties will have to avail themselves of standard litigation features—such as case-dispositive motions and hearings—if they are to benefit from the statute. *See* § 768.295(4). Thus, even accepting Vericker's position that immunity statutes could be sufficient to support certiorari review, we conclude that the Anti-SLAPP statute is not one of them.

Absent the benefit of any claimed statutory immunity, Vericker can only point to hardships typically associated with continued litigation. But we have repeatedly held that this sort of burden does not constitute irreparable harm in ordinary circumstances. *See Carmody*, 372 So. 3d at 254; *Rodriguez*, 117 So. 3d at 405. Vericker has given us no reason to break from that precedent. Accordingly, we apply the rule from these cases and hold that denials of Anti-SLAPP motions do not, by themselves, result in harm sufficient to support certiorari relief. *See Carmody*, 372 So.

3d at 252 (stressing the narrow scope of certiorari review; finding that the challenged order did not fall within that scope).[3]

IV

We do not end our analysis here. Although this statute may not grant immunity from suit (or a comparable right), the statute's text conveys the Legislature's objective that lawsuits targeting protected speech be expeditiously resolved. In stating the interests served by the statute, the Legislature noted the importance of "expeditious[] dispos[ition]" of SLAPP suits "by the courts." § 768.295(1). To carry out that objective, the Legislature added a unique timing requirement that is not part of typical civil cases or claims. That is, courts are to resolve Anti-SLAPP claims "at the earliest possible time" once the necessary filings are submitted by the parties. § 768.295(4). In addition, the statute operates to deter violations of its prohibition on meritless, speech-targeted lawsuits— accomplishing this through attorney-fee awards and, where the offending party is a governmental entity, actual damages. *Id.* It is

---

3. Vericker does not claim that the circuit court failed to follow the procedural, nondiscretionary requirements of the Anti-SLAPP statute. *See Carmody*, 372 So. 3d at 254.

true that the statute's attorney-fee provision works in favor of the "prevailing party"—and not only an Anti-SLAPP claimant. But as we have detailed, the statute does more than just award the prevailing party its attorney's fees. Thus, we disagree with Powell's view of the Anti-SLAPP statute as simply a garden variety fee-shifting statute.

We recently considered a proposal to amend rule 9.130 to include nonfinal orders denying Anti-SLAPP claims, but declined to modify the rule at that time. *See In re Amends. to Fla. Rule of App. Proc. 9.130*, No. SC2022-1084, 2023 WL 3151092 (Fla. Apr. 28, 2023). Now, with the benefit of briefing and oral argument in this case, we agree that immediate review of nonfinal orders denying qualifying Anti-SLAPP motions under sections 718.1224(5), 720.304(4)(c), or 768.295(4), Florida Statutes (2024), conforms to the Legislature's direction that Anti-SLAPP claims are to be resolved "at the earliest possible time."[4] In doing so, we rely on "our constitutional authority to ensure that Florida's procedural rules of

---

4. *See State v. Gaines*, 770 So. 2d 1221, 1225 (Fla. 2000) ("[T]his Court alone has the power to define the scope of interlocutory appeals . . . .").

- 14 -

court manifest the substantive legal enactments of the Legislature." *Carmody*, 372 So. 3d at 255. Accordingly, through a separate opinion, we amend rule 9.130(a)(3) to authorize review of the class of nonfinal orders noted in this subdivision. *See In re Amends. to Fla. Rule of App. Proc. 9.130*, No. SC2024-1798 (Fla. Mar. 27, 2025).[5]

V

Having resolved the certified conflict, we approve the decision of the Third District and disapprove the decisions from the Second District in *Davis*, *Baird*, and *Gundel* to the extent that they are inconsistent with our decision.

It is so ordered.

MUÑIZ, C.J., and LABARGA, COURIEL, FRANCIS, and SASSO, JJ., concur.
CANADY, J., dissents with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

---

5. We are not persuaded by Powell's prediction that this rule change will open the floodgates to a massive amount of nonfinal Anti-SLAPP appeals. As noted earlier, the statute includes a prevailing-party fee provision, which we believe would limit the excessive use of this mechanism as a means to unduly delay an otherwise meritorious lawsuit.

CANADY, J., dissenting.

I would quash the decision on review and remand to the district court for further proceedings.

I agree with the majority that—based on the stated legislative purpose—we should amend Florida Rule of Appellate Procedure 9.130 to authorize interlocutory review of nonfinal orders denying qualifying Anti-SLAPP motions. I dissent because I conclude that Vericker should not be foreclosed in this case from the opportunity to seek certiorari relief regarding the denial of his motion. I express no view on whether he is entitled to relief—a question that should be resolved in the first instance by the district court.

The chilling effect on the speech of a defendant falling under the Anti-SLAPP statute constitutes the irreparable harm that establishes jurisdiction to consider a certiorari petition filed by such a defendant whose motion has been denied. Here, given the absence of another means of interlocutory review, the protection extended by the Legislature to such a defendant—and the legislative direction mandating expeditious dispositions—will not properly be vindicated unless certiorari review is available.

Application for Review of the Decision of the District Court of Appeal Certified Direct Conflict of Decisions

Third District - Case No. 3D22-645

(Miami-Dade County)

Dwayne A. Robinson of Kozyak Tropin & Throckmorton LLP, Miami, Florida; Eric S. Kay of Kirkland & Ellis LLP, Miami, Florida; and Faudlin Pierre of Pierre Simon LLC, Fort Lauderdale, Florida,

   for Petitioner

Andrew M. Feldman and Neil D. Kodsi of Feldman Kodsi, Miami, Florida,

   for Respondent

Deanna K. Shullman, Rachel E. Fugate, and Minch Minchin of Shullman Fugate PLLC, Tampa, Florida,

   for Amici Curiae CMG Media Corporation, Fox Television Stations, LLC, Gannett Co., Inc., Graham Media Group, Inc., Gray Media Group, Hearst Properties Inc., The McClatchy Company, LLC, NBCUniversal Media, LLC, Netflix, Inc., The New York Times Company, Nexstar Media Inc., Orlando Sentinel Media Group, Penske Media Corporation, the Reporters Committee for Freedom of the Press, Scripps Media, Inc., Sinclair Broadcast Group, Inc., Sun Sentinel Media Group, TEGNA Inc., Times Publishing Company, and WFOR-TV

Beverly A. Pohl of Nelson Mullins Riley & Scarborough LLP, Boca Raton, Florida, and Mark F. Raymond of Nelson Mullins Riley & Scarborough LLP, Miami, Florida; and Dilan A. Esper and Lan P. Vu of Harder Stonerock LLP, Los Angeles, California,

   for Amici Curiae Pastor Carlos Enrique Luna Lam and Iglesia Casa de Dios